## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LISA AMBROSE MCGRANAHAN,

       Plaintiff,

v.                    Case No. 8:22-cv-795-WJF-TGW

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[1]

       Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2] I recommend that the decision of the Acting Commissioner of Social Security be affirmed because it is supported by substantial evidence and does not contain reversible error.

I.

The plaintiff, who was fifty-five years old at the time of the administrative hearing and who has a high school education, has worked as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.

a bookkeeper, bookkeeping/accounting clerk, and financial aid officer (Tr. 30, 44, 335). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to major depression disorder, generalized anxiety disorder, and social anxiety disorder (Tr. 335). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of moderate major depression and generalized anxiety disorder with social anxiety disorder (Tr. 23). The law judge determined that, with those impairments, the plaintiff had residual functional capacity (Tr. 26):

> to perform a full range of work at all exertional levels, but with the following nonexertional limitations: can understand and carryout routine, repetitive, unskilled tasks with the ability to make basic decisions and adjust to simple changes in a work setting; as long as interaction with the public, coworkers and supervisors is no more than frequent.

The law judge concluded, based on the testimony of a vocational expert, that the plaintiff was unable to perform her past relevant work (Tr. 30). However, in light of the vocational expert's testimony, the law judge determined that the plaintiff could perform other jobs that exist in significant numbers in the national economy, such as laundry worker,

2

hospital cleaner, and dining room attendant (Tr. 31–32). Consequently, the law judge found that the plaintiff was not disabled (Tr. 32). The Appeals Council let that decision stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact

3

made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts three arguments: that the law judge (1) "failed to properly evaluate the medical opinion evidence and failed to properly determine [her] mental residual functional capacity based on the medical evidence"; (2) "failed to properly evaluate [her] testimony"; and (3) "relied on a flawed hypothetical question to the vocational expert" (Doc. 10, pp. 17, 28, 32). None of these arguments is meritorious.

A. As acknowledged by the plaintiff, the new regulations governing the assessment of medical opinion evidence apply. Those regulations change established principles in the Eleventh Circuit concerning the evaluation of medical opinions.

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us.

Revision to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017).  Accordingly, the regulations now state (20 C.F.R. 404.1520c(a), 416.920c(a)):

5

> We will not defer or give any specific evidentiary
> weight, including controlling weight, to any
> medical opinions(s) or prior administrative
> medical finding(s), including those from your
> medical sources.

Rather, medical opinions and prior administrative medical findings are to be

considered for their persuasiveness based upon the following factors:

(1)   Supportability
(2)   Consistency
(3)   Relationship with the claimant [including]
     (i)     Length of the treatment relationship
     (ii)    Frequency of examinations
     (iii)   Purpose of the treatment relationship
     (iv)    Extent of the treatment relationship
     (v)     Examining relationship
(4) Specialization
(5) Other factors

20 C.F.R. 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

Supportability and consistency are the two most important

factors.    20   C.F.R.   404.1520c(a),   404.1520c(b)(2),   416.920c(a),

416.920c(b)(2).  Indeed, law judges are not even required to explain how

they considered factors 3 through 5, 20 C.F.R. 404.1520c(b)(2),

416.920c(b)(2), unless the record contains differing, but equally persuasive,

medical opinions or prior administrative medical findings about the same

issue.  20 C.F.R. 404.1520c(b)(3), 416.920c(b)(3).

"Supportability" refers to the principle that "[t]he more relevant

the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(1), 416.920c(c)(1).

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2), 416.920c(c)(2).

Furthermore, the new regulations provide that where, as here, the record contains multiple medical opinions from a single medical source, the law judges are not required to articulate how they considered each medical opinion, but it is sufficient if there is a single analysis of the factors. 20 C.F.R. 404.1520(b)(1), 416.920c(b)(1).

Although the plaintiff acknowledges that the new (and greatly modified) regulations apply to her claims, she relies to a great extent on quotations based on the prior regulations. Moreover, she mostly cites decisions from other circuits. Therefore, most of the legal authority she relies upon is inapposite.

That, however, is not the only fundamental flaw with the plaintiff's argument. The plaintiff contends first that the law judge failed to properly evaluate the medical opinion evidence and to properly determine the plaintiff's mental residual capacity based on the medical evidence (Doc. 10, p. 17). Specifically, the plaintiff asserts that the law judge erred by finding the opinions of Gregory Onderko, DO, Emily Reynolds, ARNP, and Marisol Valencia-Payne, Psy.D, to be not persuasive (id., p. 18).

In considering the law judge's findings regarding the medical opinions, the plaintiff does not acknowledge the deference that is due to the law judge's findings. Thus, the law judge's findings are entitled to substantial deference. Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005). Consequently, in order to overcome the law judge's findings, the plaintiff must point to evidence compelling the opposite conclusion. Adefemi v. Ashcroft, supra, 386 F.3d at 1022 (providing that findings of fact may be reversed only when the record compels a reversal); Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of the district court."). Further, the plaintiff's identification of some evidence that could support a finding of disability is insufficient, because the law judge's resolution of conflicting evidence is entitled to deference. Lawton v. Commissioner of Social

Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

The plaintiff's lack of deference is underscored by the plaintiff's attempt to dismiss the law judge's findings as those of a "lay" person (Doc. 10, p. 24). The law judge is not simply a lay person picked from the general population, but rather he has been appointed to make fact findings regarding, among other things, whether the plaintiff is disabled. And in carrying out that responsibility he is required to evaluate medical evidence. In this case, the law judge noted he has been doing that since 1994 (Tr. 20). In light of that circumstance, the law judge has undoubtedly developed skills and knowledge, and his findings are therefore appropriately entitled to deference.

Importantly, the law judge discussed, in great detail, why he found the medical source opinions not to be persuasive. Thus, he noted that the therapy and medication management sessions, which were conducted around the same time as the medical source opinions, did not support the extreme limitations opined by ARNP Reynolds and Dr. Onderko. For instance, on February 14, 2019, ARNP Reynolds and Dr. Onderko issued a

medical source opinion in which they opined that the plaintiff had "marked restrictions in her activities of daily living, marked difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence, and pace" (Tr. 27, 621–23). Further, they stated that the plaintiff would be absent one day per month due to her impairments (id.).

The law judge determined that this was not persuasive. Thus, he explained (Tr. 27–28):

> In 2018, the claimant participated in therapy and medical management sessions at Suncoast Clinic from March 2018 until she attended her final medical management session on November 7, 2018 and her final therapy session for the year on November 27, 2018. Significantly, at her August 27, 2018 therapy session, the claimant reported that she had moved to a new apartment and had increased activities such as cooking and baking, which had helped to improve her mood, and at her November 27, 2018 session, the claimant reported that her recent medication change had been positive, and that she had been very social (Exhibit B8F). The claimant then had her first therapy session for 2019 on January 30, 2019, and her first medication management for 2019 on February 1, 2019 (Exhibits B7F and B8F).
>
> These [medical source statements] of ARNP Reynolds and Dr. Onderko are not persuasive because they are not consistent with the reports from the claimant's medication management and therapy sessions in 2018 and the first sessions of 2019, which do not report any objective clinical observations of testing that supports such extreme limitations. On the contrary, the findings from the

only mental status examination reported by ARNP Reynolds noted that the claimant's memory, concentration, and attention were all intact, and the reports from the claimant's therapy sessions, especially those from the claimant's last two sessions in 2018 note that the claimant had experienced an increase in her activities of daily living, an improvement in her symptoms, and that she was very social (Exhibits B8F).

The law judge provided similar explanations for the other medical source statements issued in 2020 and 2021, which were issued by ARNP Reynolds and Linda Leffler, MD,[3] that are referred to by the plaintiff (see Doc. 10, p. 18, citing Tr. 1023, 1139). In the opinion issued on October 15, 2020, ARNP Reynolds and Dr. Leffler opined that the plaintiff "had a moderate restriction on her activities of daily living and extreme difficulties in maintaining social functioning" (Tr. 29). They "further opined that if the claimant attempted to work, she would be absent more than twice per month" (id.). Thus, the law judge discussed the following medical visits that preceded this medical source opinion (Tr. 28; see also 1126):

In the report from the claimant's first medication management visit in 2020, on January 24, 2020, ARNP Reynolds noted that the claimant reported that she was busy over the holidays and that she had helped her uncle move (Exhibit B16F). The claimant's next medication management visits were telehealth visits on April 23, 2020 and June

---

[3] Notably, the plaintiff does not directly contend that the law judge improperly evaluated the opinions of Dr. Leffler.

17, 2020. In the report from the claimant's June 17, 2020 visit ARNP Reynolds noted that the claimant reported that working outside on her flower beds and watering her plants helped to reduce her stress. The claimant was also noted to report that she had plans to travel out of the state soon and was looking forward to this (Exhibit B16F).

At the claimant's August 12, 2020 medication management visit, ARNP Reynolds discussed the issue of psychotherapy with the claimant, as she had recommended that the claimant resume therapy at previous visits, but the claimant had not resumed participation in psychotherapy. The claimant reported to ARNP Reynolds that she declined to participate in psychotherapy because she had learned what to do in therapy, and just needed to put those things into practice (Exhibit B23F). At the claimant's next visit on October 13, 2020, ARNP Reynolds noted that the claimant reported that she was engaging in healthy lifestyle behaviors such as exercising regularly, and ARNP Reynolds made no change to the claimant's medication regimen (Exhibit B23F).

In the final opinion issued on June 9, 2021, ARNP Reynolds and Dr. Leffler opined that the plaintiff "had marked restrictions on her activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence or pace, and would likely experience repeated episodes of deterioration or decompensation in work or work-like settings" (Tr. 29, 1141). They again "opined that if the claimant attempted to work, she would be absent more

12

than twice per month" (Tr. 29). Similarly, the law judge discussed the

following medical visits that preceded this medical source opinion (id.):

> The claimant did not attend her next follow up
> appointment with ARNP Reynolds on December
> 8, 2020 and did not return for a medication
> management visit until February 5, 2021 (Exhibit
> B23F). The report from the February 5, 2021 visit
> confirms that there was a four-month gap in the
> claimant's treatment, as her last medication
> management visit in 2020 was the October 13,
> 2020 visit (Exhibit B23F). At the February 5, 2021
> visit, the claimant reported no needs or concerns
> other than medication refills and stated that she has
> been exercising and had various projects going
> that helped to keep her busy (Exhibit B23F). The
> claimant reported no significant new symptoms or
> concerns at her next medication management visit
> on April 6, 2021, with ARNP Reynolds noting that
> the claimant only reported an increase in her
> anxiety while driving, and once again made no
> changes to the claimant's medication regimen
> (Exhibit B23F).
>
> Even though the claimant reported no significant
> increase in her symptoms, and no changes had
> been made in her medication regimen at her only
> two visits to Suncoast Clinic in 2021, ARNP
> Reynolds and Linda Leffler, MD signed another
> medical source statement on June 9, 2021 in which
> they opined that the claimant had marked
> restrictions on her activities of daily living, marked
> difficulties in maintaining social functioning,
> frequent deficiencies of concentration, persistence
> or pace, and would likely experience repeated
> episodes of deterioration or decompensation in
> work or work-like settings.
>
> Finally, for the medical source opinion of Marisol Valencia-

Payne, Psy.D, the law judge provided a cogent explanation as to why this

opinion was not persuasive. Namely, Dr. Valencia-Payne's medical source

opinion, that contained similar extreme limitations, was based on a single

video examination of the plaintiff. The law judge stated (Tr. 28–29):

> Marisol Valencia-Payne, Psy.D performed an
> "independent medical examination" of the
> claimant on September 22, 2020. Dr. Valencia-
> Payne reported that her mental status examination
> of the claimant revealed that the claimant
> exhibited a coherent and goal directed thought
> process, her attention and concentration appeared
> to be intact, and her recent and remote memory
> skills were intact. Nevertheless, based on this
> single video examination, Dr. Valencia-Payne
> opined that the claimant's current psychiatric
> condition was significantly impairing her current
> level of functioning and she would likely
> experience episodes of significant
> decompensation and deterioration in a work or
> work-like setting which would cause her to
> withdraw from the situation and/or experience an
> exacerbation of symptoms. Dr. Valencia-Payne
> further opined that the claimant would be likely to
> be absent from work more than three times per
> month, and from a psychiatric and psychological
> viewpoint, the claimant was not able to be
> gainfully employed (Exhibit B17F). Dr. Valencia-
> Payne also signed a medical source statement on
> September 22, 2020 in which she opined that the
> claimant had marked limitations in concentration
> and persistence, social interaction, and adaptation,
> and if the claimant attempted to work, she would
> be absent for more than three days per month
> (Exhibit B18F).

Thus, the assertion that the law judge did not provide a

meaningful evaluation of the explanations that supported the medical source opinions is clearly baseless. In fact, the law judge discussed this evidence along with other evidence in the record that refuted the extreme limitations opined. Moreover, to the extent the plaintiff quibbles that the law judge did not assess the symptoms "checked" by the providers, this falls within the principle that the law judge need not refer in his decision to every piece of evidence. Dyer v. Barnhart, supra, 395 F.3d at 1211. The law judge considered the persuasiveness of these opinions and gave cogent reasons for not finding them persuasive. That conclusion is entitled to deference.

As noted by the plaintiff, the law judge did find the medical opinions of Alan Harris, Ph.D and George Grubbs, Psy.D, to be partially persuasive (Tr. 29–30; Doc. 10, p. 25). Dr. Harris and Dr. Grubbs both opined that the plaintiff's mental impairments were nonsevere and that she had a "mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself" (Tr. 29–30). The law judge found that (Tr. 30):

> the evidence received at the hearing level supports a finding that the claimant has only mild limitations in understanding, remembering, or applying information and in adapting or managing

> oneself, but the evidence received at the hearing
> level supports a finding that the claimant has a
> moderate, rather than mild, limitation in
> interacting with others and in concentrating,
> persisting, or maintaining pace.

Similar to the other medical opinions, the law judge expressly considered the opinions of Dr. Harris and Dr. Grubbs and gave a reasonable explanation for partly discounting them.

While the plaintiff contends that the RFC is insufficient due to a failure to evaluate properly the medical opinions, the plaintiff does not state with any specificity what the RFC should be (see Doc. 10, p. 27). Presumably, the plaintiff wants the extreme limitations opined by ARNP Reynolds, Dr. Onderko, and Dr. Valencia-Payne to be adopted. However, the plaintiff has provided no evidence, in addition to that already reviewed by the law judge, to compel such a finding. See Adefemi v. Ashcroft, supra, 386 F.3d at 1022.

B. The plaintiff also argues that the law judge's evaluation of her subjective complaints was inadequate. As an initial matter, the plaintiff reiterates the same arguments she set forth in her first issue. Thus, the plaintiff states that "the ALJ erred by concluding that the clinical and objective evidence does not support a finding of disability . . . when every medical source to examine [the plaintiff] came [to] the opposite conclusion

based on the same evidence considered by the lay ALJ" (Doc. 10, p. 30). This argument clearly fails for the reasons discussed previously, supra, pp. 5–16.

The plaintiff further asserts that the law judge "offered no other reasons for discounting [her] subjective statements besides a vague reference to the clinical and objective evidence following a boilerplate rejection of her allegations" (Doc. 10, p. 31). This argument is unavailing.

It is well-established that the responsibility for credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208 1212 (11th Cir. 2005). Consequently, to overturn the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels a contrary finding. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, supra, 395 F.3d at 1210. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2)

17

that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n. 6 (11th Cir. 1985).

The law judge recognized the need to articulate a credibility determination (Tr. 26). He referred to the pertinent regulations and the Social Security Ruling governing such determinations (id.).  This demonstrates that he appropriately applied the Eleventh Circuit pain standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

The law judge discussed, in detail, the plaintiff's subjective complaints. Thus, the law judge stated (Tr. 26–27):

> When [the plaintiff] filed her applications for disability, the claimant alleged that her ability to perform substantial gainful activity was limited due to major depression, generalized anxiety disorder, and social anxiety disorder (Exhibit B1E). In response to a supplemental anxiety questionnaire on April 30, 2019, the claimant reported that she experienced frequent anxiety attacks, and had experienced 15 anxiety attacks in the previous 6 months (Exhibit B4E). In her function report, the claimant reported no physical limitations, but reported that she was limited in

memory, completing tasks, concentration, and getting along with others (Exhibit B5E). The claimant's testimony at the hearing was consistent with these allegations, with the claimant testifying that the symptoms from her impairments substantially limited her functional ability.

The law judge found that, although the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision" (Tr. 27). As previously shown, after making this determination the law judge went through various medical records, covering several years, where the plaintiff herself reported positive improvements of her symptoms and her activities of daily living (see supra, pp. 10 –11); Foster v. Kijakazi, 8:20-CV-1008-TGW, 2022 WL 11382974 at *5 (M.D. Fla. Mar. 2, 2022) ("The law judge is clearly authorized to consider the plaintiff's activities of daily living in evaluating allegations of disability.").

The law judge cogently found that the plaintiff has been able to be "independent in her activities of daily living, has been able to live in her own residence, can drive a car and function independently, and has not required hospitalization or any intense treatment for her mental impairments, the symptoms of which have been generally controlled by her prescribed

medication regimen" (Tr. 30). The law judge could reasonably conclude these circumstances are inconsistent with the allegations of debilitating symptoms. Danan v. Colvin, 8:12-CV-7-T-27TGW, 2013 WL 1694856 at *3 (M.D. Fla. Mar. 15, 2013), report and recommendation adopted, 8:12-CV-00007-T-27, 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013) (assessing subjective complaints of disabling mental impairments).

Significantly, though, the law judge did not reject all of the plaintiff's subjective complaints. To the contrary, the law judge credited some of the plaintiff's testimony. As discussed, the law judge found the plaintiff had a moderate limitation—as opposed to a mild limitation, as opined by Dr. Harris and Dr. Grubbs—in interacting with others and in concentrating, persisting, or maintaining pace (Tr. 29–30).

Thus, the law judge's explanation is reasonable, supported by substantial evidence, and adequate to discount the plaintiff's subjective complaints. See Heppell–Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 698–99 (11th Cir. 2006). Accordingly, the plaintiff's argument fails for these reasons.

C. Finally, the plaintiff asserts that the law judge "relied on a flawed hypothetical to the vocational expert" which did not "accurately account for a finding that the [plaintiff] has moderate restrictions in

20

concentration persistence, or pace" (Doc. 10, p. 32). This contention lacks merit.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1270 (11th Cir. 2007). However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

In this matter, the law judge found that the plaintiff was an individual closely approaching advanced age with at least a high school education and had the following residual functional capacity (Tr. 26):

> The [plaintiff] has the residual functional capacity
> to perform a full range of work at all exertional
> levels, but with the following nonexertional
> limitations: can understand and carry out routine,
> repetitive, unskilled tasks with the ability to make
> basic decisions and adjust to simple changes in a
> work setting; as long as interaction with the public,
> coworkers and supervisors is no more than
> frequent.

Accordingly, at the supplemental hearing the law judge asked the vocational expert to assume "a closely approaching advanced age individual . . . with a high school education" and who (Tr. 64):

would have no exertional limitations, but is limited
to understand and carry out routine, repetitive
unskilled tasks, with the ability to make basic
decisions, and to adjust to simple changes in a
work setting, as long as interaction with the public,
co-workers, and supervisors will be no more than
frequent.

Thus, the hypothetical question posed to the vocational expert

clearly matches the residual functional capacity established by the law judge.

Consequently, the hypothetical question is not flawed. If the plaintiff thought

that the question should have contained greater restrictions, she needed to

demonstrate that the evidence compelled additional limitations in her

residual functional capacity.

Moreover, to the extent that the plaintiff argues that the mental

limitations in the residual functional capacity and the operative hypothetical

question are insufficient as a matter of law to account for moderate

difficulties in concentration, persistence, or pace, that contention is

unpersuasive. The plaintiff asserts that the restrictions set forth in the

hypothetical question

only limited Plaintiff to understanding and
carrying out routine and repetitive tasks, making
basic decisions, adjusting to simple changes in a
work setting, and no more than frequent
interactions with the public, coworkers, and
supervisors (Tr. 63-65). Although such a
restriction relates to the finding that Plaintiff has
moderate limitations interacting with others,

22

[however] it says nothing about [her] ability to concentrate for hours while in a work setting, maintain a particular work pace over the course of a workday or workweek, nor does it describe limitations in Plaintiff's ability to persist at tasks, as discussed in the above cases from the Eleventh Circuit and District Court.

(Doc. 10, p. 33).

The Eleventh Circuit case, referred to by the plaintiff, is Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180–81 (11th Cir. 2011). Winschel merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence, or pace. Id. Accordingly, Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks. See Washington v. Social Security Administration, Commissioner, 2013 WL 150237 (11th Cir. 2013) (unpublished decision); Smith v. Commissioner of Social Security, 486 Fed. Appx. 874 (11th Cir. 2012) (medical evidence demonstrated that performance of simple, routine, and repetitive tasks adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace); Scott v. Commissioner of Social Security, 495 Fed. Appx. 27 (11th Cir. 2012) (medical evidence

23

demonstrated that the plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace); Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (medical evidence supports the conclusion that the plaintiff could perform simple tasks notwithstanding a moderate limitation in maintaining concentration, persistence, or pace).

      Thus, the law judge's limitation in the hypothetical to "routine, repetitive, unskilled tasks" adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace. Moreover, this case is further distinguishable from Winschel since, in that matter, the law judge did not include any meaningful functional limitations, unlike here. Thus, the plaintiff's contention that the hypothetical question was flawed is meritless.

VI.

      For the foregoing reasons, I recommend that the decision be affirmed, and the case closed.

      Respectfully submitted,

         THOMAS G. WILSON
    UNITED STATES MAGISTRATE JUDGE

DATED: March 8, 2023

24

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.